Hetznecker. Good morning, everyone. Mr. Hetznecker. Good morning, Ross. It's very nice to see you. You're the only one who's going to say that today. There goes a bit more candor than he is. Good morning, ladies and gentlemen. My name is Paul Hetznecker, and I represent the appellant, Jamel Lewis, in this appeal. I would respectfully request three minutes rebuttal time. I believe my colleague, Mr. Addis, is going to request two minutes rebuttal time, okay? It's a good honor to be here because this is a very significant, important issue for this court. And my client, Jamel Lewis, who stood charged with various offenses, was eventually sentenced for a crime that he did not commit and for which he was not charged. And that sentence was essentially based on United States v. Iran in violation of his rights. Now, I have argued at great length, and will argue as well for you today, that this was structural error. But I would be remiss if I ignored the very clear development in the law by the circuits around the country regarding what has occurred with respect to harmless error and the analysis that was applied by the majority in this particular case. Very clearly, there are two grounds in which this court could find in favor of my client, Jamel Lewis. The first, as I stated, is the government has fairly proved that my client stands to an aggravated offense for a crime he was not charged with, for which he was not tried upon, is harmless error beyond a reasonable doubt. There is no way the government can establish that my client serving a 24-month sentence is anything but harmless. That my client essentially is serving time for a crime that was not charged in the indictment, for which he was not tried, and proven guilty beyond a reasonable doubt. Now, the circuits around the country, there are nine separate circuits, and those decisions I provided to the court in my letter, nine separate circuits have viewed this L.E.A. issue and have decided in this very narrow group of cases, cases which are essentially in between the decision made by the Supreme Court in L.E.A. and pending appeal, that in the very few narrow cases, that those cases should be sent back, either under planned error analysis, harmless error analysis, or in the case of Hackett, a constructive amendment. That the constructive amendment occurred when Hackett was sentenced for discharging, a 10-year mandatory for discharging a weapon, which was a crime that was not charged in the indictment, for which he was not convicted of. So there are several ways in which the courts throughout this country have provided guidance, I believe, to this court, and provide an organization to this court, to essentially decide in favor of Jamelle Lewis. Now, three of those circuits have decided that in fact, well, the government has conceded in three of those circuits that in fact, in a little error, requires re-sentencing. And those are non-presidential decisions, but I've cited those in my letter. There's Strayhorn, Cooper, and I believe Clark as well, from the D.C. Circuit. All three of those, the government conceded. By the way, which is exactly what the government did in this case with respect to the code offense, that because of the unique posture of this particular case, and the fact that the code offense were convicted of charges in which my client was acquitted of at trial, that those code offenses came back to re-sentencing, so that after this court decided that the evidence was insufficient on the intimidation, that they came back and the government in fact conceded that a re-applies to them. So my client faces this cock-ass situation in which he is, because the government has taken a position that harmless error, unless a very clear mandate from a lien and going back to a prime date throughout, that harmless error, that the decisions by the judges in the appellate court should operate in the same way that a lien dictates that district courts can't do. That is, substitute their judgment for the jury's decision. And that's why this case is so important. The second ground on which this court can decide in favor of my client is the one that I argued at great length, which is structural error. And the question becomes whether or not the framework of the system of justice, the framework in which the trial was commenced and ultimately decided, is violated by sentencing someone who was not charged with an offense, that is brandishing, and was not convicted of that offense. Does that fall within the category of structural error? And I submit that it does. Nader is a case that the government cites in their lives very heavily on this issue, and I think Nader can be distinguished very readily because Nader, in fact, was a case where when Nader declined to find structural error, Nader was an omission in an instruction. That is the materiality. That's not this case. This is not an omission in an instruction. This is, in fact, an uncharged crime in which my client is serving an additional 24 months for. Nader outlines those category of cases which the courts have deemed over the course of many decades need to be structural error. The denial of counsel has been given. The right to actually represent yourself at trial. The right to have an equal degree of instruction. The indictment here, unless I'm wrong, the indictment charges the very conduct that would be tantamount to brandishing, which has been labeled that conduct as brandishing. Is that at all significant? If it isn't significant, why isn't it? Well, the significant charge is very clear, that if we look at the indictment as being the star and the compass, the basis upon which we establish what is defended against at trial under the Fifth Amendment grand jury provisions, and, again, my argument is really on the structural error issue. The grand jury protections, the Fifth Amendment protections, the Sixth Amendment protections are intertwined. We do so, but we cannot have an individual not charged with a crime face a sentence for which he is not convicted. Judge McKee is saying that conduct was in the indictment, but isn't the answer to that that that conduct was charged in the Hobbs Act? Yes, and not in the indictment. That's correct. That's precisely it. The answer is better than your answer. In fact, I've already said it, but I wouldn't want you to. Let me take you to the structural error question. Yes, Your Honor. If Apprendi error is not structural, how can Elaine error be structural? Because Elaine alters that. What is it that Elaine said? Elaine said that a fact, a fact which becomes an element which enhances the penalty, becomes a new offense, becomes an adorned offense. And that's the language where Elaine has changed it. How is that any different than Apprendi? Oh, it's significantly different in the sense that in Elaine, what essentially you're saying is that we have a new offense. You cannot be tried upon a charge that was never levied originally. So despite the fact that there may be language in the indictment, not on the 1924C, but on the Hobbs Act count, does not change after the rubric, which is that you cannot face a penalty, an enhanced penalty, for an offense that was never charged. And that's what Elaine said. And that's why Elaine changed it. You're still enhancing the penalty in both cases. The difference, though, Your Honor, is in this case, in Jermell Lewis' case, is you're enhancing the penalty based on a crime that was not charged. Mr. Hetzenecker, isn't there something more, however, than just the prospect and, here, the reality of an enhanced sentence, if indeed the indictment is a crime charge? It actually dictates everything that happens thereafter. In fact, not merely the trial. That's exactly right, including whether or not to plead, including whether or not to actually cross-examine on certain issues. But at sentencing, what really Elaine is saying is that the Sixth Amendment due process paradigm applies at sentencing as well as it does at trial. So if we're talking about a violation of the Sixth Amendment at sentencing, which clearly, Elaine says, is based on this notion that it has characterized this element for the enhanced penalty as a new offense, an aggregated offense. And that's brand-new territory. And it's significant here because what the government is asking you to do, the government does every day, does this very clearly. It ensures, hopefully, the protections of the Fifth and Sixth Amendment when they charge. They don't generally intend to charge something that they're not going to try and convict someone on. So, in fact, if you're not charged with robbery, but you're charged with misdemeanor theft and simple assault, and the jury comes back with a conviction for misdemeanor theft and simple assault, you can never sentence that person to robbery, even though the evidence may establish one. Excuse me. What's the genesis of this? You know, we know that it started at sentencing. I was looking at the pre-sentence report, and it described count three, and to me it looked like that was the genesis of the error because it identifies the use and carry, but identifies the mandatory minimum of seven years. Is that the genesis of the problem that's arisen here? Absolutely. If you look at it as a pure sentencing error, you're absolutely correct, Your Honor. It is. In fact, if we apply the harmless error analysis, and we will find if we see it as a sentencing error, a pure sentencing error, that there's no question there's harm, that it would be reversed as all the other circuits have on the basis that, in fact, harm is found because no one could ever say that 24 months' incarceration for a crime you were not charged or convicted of could ever be anything but harmful, and that's exactly what Mr. Lewis faces. So, yes, the genesis of this is the sentencing, and it's a pure sentencing issue. In that sense, you're absolutely correct, and this court could decide on that basis and never reach the issue of a special error. But my question literally was just the genesis, that these two numbers were transposed, that, in fact, it should have been a five here instead of a seven, proving that the district court followed that guidance from the PSR, and that's what led us to where we are? That is absolutely correct. And that would reflect again on my position, and I think articulated very well in the dissent by Judge Rendell, that a pure sentencing error is an automatic reversal. It's an automatic remand, as all these circuits have said over and over again, throughout. And, again, Mr. Adams will harvest the trees from the forest when he gets up here, but all those cases essentially have said that, in fact, pure sentencing error, it gets reversed. Well, and we do that when there's an improper guideline calculation. We don't go through the record and say, well, is there any evidence here to justify it? That's exactly right. That is the rubric, and I cite Davis in my brief, in really talking about the origin of this, what I believe to be an evolutionary feature regarding the court on this issue, and Davis may, in fact, talk about that and reverse it, based on the fact that Booker was decided. Booker changed the landscape for all of us. When you first briefed this case, in fact, when you first argued this case before our panel, that wasn't your position. That was not my position. You were dragged into that position by Judge Rundell. Well, I don't like that term. Judge, with all due respect, and despite the fact that I disagree with you, because it's a really thorough one, and I will say this, that I do cite the Honorable Louise in my brief, and I cited it in all that nausea. I know you did that, but you didn't, your argument in your brief, which is the only brief you filed in this particular matter, argued that this was trial error, and that you argued that the error was the fact that brandishing was not included in the indictment. That's correct, and I will say, and Your Honor is correct about that, but I will also say that was in the fall of 2003, and as you look at my letter that I submitted to the court, there have been a plethora of decisions since then based on a lien that have said, it is harmless error, and if I mistakenly argued that at the time, then I certainly apologize to the court, but I certainly will ask you to look at it. That's a little bit of a moving target. One of the questions I wanted to ask you was, I mean, the basis of your argument below, when we first heard the case, was structural error. It was. I counted four times you mentioned structural, the word structural, in your petition, and it either deals with discussing a case or discussing what the majority held. You never declaratively said, we're arguing structural error, so it seems like you've sort of, it's a moving target. Let me respond. I think that's a good point. You can answer that, but answer that question. Yeah, I will answer that question. Very clearly, not on my knees to speak to that. I studied ad nauseam, and if I was inarticulate in citing the application of not on my knees to the plain error, harmless error analysis, then I apologize to the court, but it's certainly my intention to argue both, and I think that Mr. Addis has provided a brief that does essentially establish that. Do you have any questions, Judge Smith? You didn't get any? No, I got my question, and thank you, Chief. Okay, thank you. Thanks very much. May it please the Court, my name is Michael Addis, and I represent amicus curiae amachi in this case. I'd like to start out by explaining all the things that everyone agrees on in the case. So everyone agrees that Mr. Lewis should have been sentenced for the crime for which he was indicted, tried, jury instructed, and convicted. That's the crime of using or carrying a firearm during a crime of violence. Everyone agrees that there was a lane error in this case because the judge applied a longer mandatory minimum sentence for a separate and aggravated offense of brandishing that was both unindicted and non-deliberated upon. Everyone agrees that that error violated Mr. Lewis's Fifth Amendment right to a grand jury indictment and Sixth Amendment right to notice in a jury trial, and everyone agrees that Mr. Lewis preserved the error. The only question here is whether the error of sentencing a defendant for a crime for which there was no indictment, no trial, no jury instruction, and no conviction can be found harmless beyond a reasonable doubt. And I will explain that. That sounds sort of a structural argument, though. Are you assuming that it is not structural and therefore we get to the harmless error analysis? Because we don't get to the harmless error analysis if it's structural error. No, our position is that it cannot be harmless under two ways. First, under a harmless error review, the question would be whether or not the government can prove beyond a reasonable doubt that the sentence in this case would have been exactly the same had the proper mandatory minimum sentence of five years been applied. And that's because the error in this case is a pure sentencing error, which I'll discuss in a minute. But we also take the position that this did amount to a structural error because it was a constructive amendment of the indictment. And if you look at it that way, it cannot be harmless for that reason as well because it would totally avoid the harmless error analysis. I'm not sure how you view it. What if you view it as a pure sentencing error? It seems to me you're giving more ground than you need to on the structural error argument. And I don't know of any case in science where a pure sentencing error is structural. There's only a sentencing error because of what happened before. It's a sentencing error because of what you mentioned, the failure to indict or really provide notice for the concept of brandishing. So the structural error, when it becomes, it's like showing you this can. You only know what it is when you look inside the box. You only see the error of the sentencing when you look back to what he was charged with in the indictment. So why would you say it's only a sentencing error? So it's only a sentencing error because, exactly as you pointed out, there was a complete crime charged in the indictment. That was the crime of using or carrying. The jury was instructed on all of the elements of that complete crime, using or carrying, and therefore the jury was instructed properly and completely for the offense that was charged in the indictment. And it was only at sentencing, as Judge Greenway pointed out, that the improper mandatory minimum sentence was applied. And so it was a pure sentencing error because there was no error at all during the indictment, trial, jury instruction or conviction phase. Mr. Adams, let me ask you this question. First of all, you did a great job on your brief. But, in effect, representing the amicus as you are, aren't you reshaping the argument before this court? And can an amicus reshape an argument? I'm actually not reshaping the argument. You can't take a point out. In his brief, he cited extensively to the case of Law and the Lease from the 8th Circuit. And as he specifically pointed out in his brief, in that case the court did not find a structural error. The court applied a plain error review and said that even under a plain error review, a pure sentencing error would not be wrong. Would you acknowledge in the only brief that Mr. Lewis' counsel has filed in this case that that brief focused strictly on structural error? I would disagree with that. Because he specifically cited from pages 4 through 7 of his brief to the case of Law and the Lease, explaining that in that case the error was not, the way they held the error was not structural. And they held that a plain, that the error was a pure sentencing error that affected the length of the sentence and, therefore, could not be plain error and certainly could not be harmless error. Isn't Law and the Lease something we should rely on? Because it doesn't even cite Cotton. And had it cited Cotton, it would have come out to the totally opposite conclusion because Cotton would have mandated it. So Law and the Lease really doesn't advance anything. It doesn't account for Cotton, correct? I would disagree with that. Does it cite Cotton? Not that I'm aware of. I don't believe it cites Cotton. But let me explain Cotton. So Cotton actually is quite a good case for Mr. Lewis. And the reason for that is that in Cotton, the defendant was in the operative superseding indictment, was charged with a complete base offense. The jury was properly instructed on all of the elements of that complete base offense. And at sentencing, the judge applied an improper statutory maximum in that particular case, applied an offending error. But in that case, there was no objection. And so the court was specifically looking at it under plain error review, which is an entirely different test than under harmless error review. But the court's analysis is actually quite helpful for a harmless error review because in that case the court said there was error, that was plain, and then it also endorsed the view that there was a constructive amendment in this case. The court cited Sterone, and it also looked at other constructive amendment cases and got to the jurisdiction question specifically because of the constructive amendment point. And it also made the point that where an objection is preserved, that it's well established that the grand jury indictment cannot be constructively amended. It was only under the fourth separate prong of that case, because of plain error, that the court held that the error, apparently pure sentencing error, did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. And since the court was only analyzing what the grand jury would have done under that prong, that prong is completely irrelevant here where the defendant has no burden. And, in fact, it's the government's burden to prove beyond a reasonable doubt that the sentence would have been the same. Let me see if I have your analysis correct. You're saying at the outset that Lewis objected to the Elaine error, and that's conceded. Secondly, assuming he objected, is the Elaine error structural? And you're saying that that was brought up at least somewhat. But if it's not structural, then you're saying that it's not harmless error. Isn't that really your argument? Because you really don't get the plain error since he objected to the fact that there was Elaine error at the outset. That's absolutely correct. And I would say that the court does not need to address the structural error point if it doesn't want to. It can specifically go to the harmless error point. I was going to ask a question about structural error. Would you agree, Mr. Addis, we would have to overrule Vasquez in order to find structural error here? Not at all. And I think the reason for that actually ties specifically into Judge Ambrose's question about pure sentencing error. So maybe I can address them together. In the United States v. Vasquez, this court was dealing with an entirely separate case. The indictment there charged an aggravated crime. The jury was not properly instructed on all the aggravating elements of that charged crime. And the judge applied a sentence that was up for an aggravated offense for which the jury had not found all the elements. But that was included within the indictment. And so that's a very different case than here because in that case there was an omission from the jury instruction. And so this court was able to analyze the evidence. But there was an omission in the jury instructions in the Crenca, and there was a holding of no structural error. That's exactly right. So there was an omission from the jury instructions in the Crenca. So that can't have the significance you ascribed to it. But the indictment was correct, though, in the Crenca and in Vasquez. Correct. So the difference there is that in Vasquez, the indictment charged the aggravated crime. And so the defendant was both on notice of the charges and also the jury instructions. You can view it as an omission because the jury instructions didn't include all of the elements that were in the indictment. But in that case they should be. Can I go back to what the Chief Judge was asking? The argument can't be that any pure sentencing error is ipso facto structural because these are cases we're talking about right now where there were problems that you're pinning back to the indictment. Something was in the indictment. That's what the real problem is. So is your position that all pure sentencing errors as you've described them are structural, or is it that where you have a constructive amendment of the indictment that affects the sentence, you've got a structural error? It's my latter view that where there's a constructive amendment of an indictment, there's a structural error. But in this particular case, there was also a pure sentencing error. And the reason why there's a pure sentencing error was, again, there was no omission from the indictment. It charged a complete crime. I understand your position that there's a pure sentencing error. I'm just trying to pin down the logical end of your position or to understand your position, and I guess what I'm hearing you say is you're not saying that every sentencing error, quote, pure sentencing error, is necessarily structural. What you are saying is where you've got a sentencing error that's affected by a constructive amendment of the indictment, that is structural. Have I understood you correctly? That's correct. A constructive amendment usually involves a conviction for something that's not charged. Does it matter that here it's sentencing rather than conviction? I think it very much matters, and the reason being that it's even more egregious in this case. So in a typical constructive amendment case, the jury has found all the elements of the aggravated crime that was not charged in the indictment, and so you actually have a jury verdict that's beyond a reasonable doubt on all of those elements. And this court has held that constructive amendments can never be harmless or preserved. So in this particular case where you don't even have a jury verdict on all of the elements that were, that are being, for which the crime for which the defendant is being sentenced, it's significantly more egregious because we don't have a determination by a jury that all the elements were found beyond a reasonable doubt. When you're looking at C1A subparts 1, 2, 3, do you view those as sentencing factors or separate offenses? And depending on how you come out on that, does that impact our review as harmless or structural? So they're separate offenses, and you don't have to take my word for it. You could take the word of the Supreme Court, which specifically held they're separate offenses. Those exact subsections. So using or carrying is a separate offense and a lesser offense, says the Supreme Court, than brandishing, subsection 2. And because they're separate offenses, that is why you have a constructive amendment in this case. Let me go to Vasquez for a second. Looking at Vasquez now in hindsight, you've got Vasquez, Arlene, and what Justice Thomas did with Arlene. And does that suggest that perhaps Ken Skogler was right in Vasquez? It was a 7-6 decision. And we now know how the Supreme Court analyzes Arlene there because we can look at how they analyzed it in Arlene. And they didn't get into the structural error versus non-structural error or harmless error versus non-harmful error. They just have a very simple syllogism. Brandishing increases the force of the element. Therefore, we land. Nothing about structural error or harmless error. So the court could certainly take that view. It could certainly decide to overrule the decision in the United States v. Vasquez. However, I would also make the point that it need not take that view if it chooses not to. There's a separate ground in that. And in the case of Arlene itself, the aggravating element was actually proposed to the jury. And so in that case, the jury actually rejected that aggravating element. And so it's a different case than here where the jury never had the opportunity to view the aggravating element. So you could make that difference and make a distinction out of it, or you could decide that the United States v. Vasquez was wrong as a project. To get to that point, though, then you have to say it was trial as well as sentencing error, whereas you are going to have to say that this is strictly a case of sentencing error. I'm not sure that I followed. We should talk about Vasquez. Okay, Vasquez. You're talking to distinguish this from Vasquez. You're saying that we can distinguish this also from Arlene because in Arlene it was charged and here it was not. So consequently, doesn't that take you back into the initial analysis that Mr. Hexeter made that this is both trial and sentencing error? No, not at all. So both the Arlene case and this case were cases of pure sentencing error but for different reasons. In the Arlene case, there was a pure sentencing error because the jury had rejected an aggravated element finding. But in this case, there was pure sentencing error because the indictment did not charge an aggravated offense. The jury instructions, therefore, completely and properly instructed the jury on all the elements on the charged offense, and it was only at sentencing that the judge applied an improper mandatory minimum sentence. The argument that you make seems almost identical to the position that Justice Ginsburg took in her dissent in Iroquoinko, but that dissent didn't carry today. Why should we adopt that argument? So Washington's Iroquoinko was simply a different case than here. In that case, the state appellate court had looked at the case as an omission from the trial jury instructions and held that apprendee errors across the board can never be harmless. The Supreme Court, in granting cert, simply looked at that one question,  and the defendant, as the Supreme Court tried to argue, that there was also an omission from the charging instrument in that case, in that case of state information. But the Supreme Court made clear that it was accepting, without reevaluating, the premise on which the state appellate court had treated the error, and under the view that there was an omission from the trial jury instruction, the Supreme Court held that where there's an omission from a trial jury instruction, that all apprendee errors are not harmless. Thank you. Judge Smith, did you want to add anything? Thank you. No questions. Thank you. Good morning, Your Honor. May I please be quick? The last time you were here... Oh, I'm sorry. Jim and Ed, are you there also? I am here. I am here, too. I have no questions so far. Oh, I'm sorry. Thanks for being here. The picture's not as good as it should have, which is... I wouldn't even go there. I know. I'm not looking at you. I forgot you were there. I'd be sitting in a bar on the road. Thank you. I wanted to suspend you from having a look at me. Okay. Why does it sound to me that when you stand up, you tell the court what the hell? Why is that? I have no idea, Your Honor. I don't either. I was going to mention that last time when you were here, you mentioned that you haven't gotten a chance to read the U.S. Attorney's Manual recently. Have you gotten a chance to read it? I've looked at parts of it, Your Honor. Oh, okay. I'm still working my way through all of it. The picture is part of that. Okay. Why don't you go ahead? Thank you very much, Your Honor. May it please the Court, Robert Zausman on behalf of the government, thank you again for the privilege of appearing before this court. At the risk of oversimplification, I would say that the question before this court is very straightforward. It's that, is the omission of an element from the indictment structural error or not? If it's not structural error, then it's subject to review for harmless error. And I don't think there can be any serious debate that the government can establish in this case, beyond a reasonable doubt, that the error was harmless. Why are we looking at this when you've gotten it? We've got all we want to talk about. Okay. Go ahead. Mr. Hennick, there are cases, mostly not presidential, from other courts. We addressed them in our 20HA letter. And what they show, of course, is that there will be cases involving a lane error or any other type of error in which the government cannot establish harmless error. Because of the fact that a lane is a prime example, as someone mentioned very recently, in a lane, the jury actually found that the brandishing element was not there when the judge imposed it anyway, acting under the law of Harris, that existed before Harris was overruled in a lane. That's a classic example of where, at this moment in time, we would not be able to establish harmless error. No one can dispute it, though, in this case. In this case, with respect to the indictment, the grand jury obviously found that these men pointed guns because they set it one page away from the 924C count. And there was never any dispute regarding brandishing at trial or at sentencing. Because remember, Mr. Lewis had every incentive, even when it was thought that the brandishing could be found by the judge, he had every incentive to dispute it at sentencing. And he didn't, because there is no dispute. So what this all comes down to is, is this a structural error that is not amenable to harmless error review? And the answer to that is no. And the important thing there is that this court is not writing on a blank slate. The Supreme Court cases provide pretty direct guidance. We know that there are two types of error here, under either Apprendi or Allain, and Apprendi and Allain are identical, for purposes of this analysis. One is the error in the indictment, where the element is left out. And then the second error happens at trial, where the jury is not asked to find the element. With respect to the jury error, the Supreme Court has ruled explicitly. And if there are three words from my argument today that I would ask this court to remember, if none other, it's Washington v. Roquenco, which has gotten amazingly little attention from my friends on the other side here. Roquenco holds that omission of the element from the jury's consideration is not structural error. It's subject to harmless error review. And that's why, when this case was originally briefed, as Judge Fischer has pointed out, the defense was savvy enough not to argue that trial mistake with respect to the jury, knowing that Roquenco was binding. Instead, their only argument was that the omission from the indictment must be structural. And thus we turn to that, and that's been the focus of our briefs. Well, there we have Cotton. Cotton tells us that if the objection is not preserved, that it's subject to review for plain error. That means it's not structural right then and there. And then on the fourth prong, the Supreme Court says, if the evidence is overwhelming and uncontroverted as to the omitted element, it will never satisfy the plain error test. It will never be the type of error that offends the fairness, integrity, or public reputation of the judicial proceedings. So that leaves us with this very narrow issue in this case, where you have a preserved objection to the omission of the element from the indictment. Is that structural? And that would be remarkable. It would create all these strange dichotomies where, if you make the objection, it's automatic reversal. But if you don't make the objection, then you automatically lose under Cotton. How can that be? And how can it be that at trial, the omission of the element from the jury, the jury that affords far more protections to a defendant in the proof of crime, how is that not structural and subject to review for harmless error, what this omission from the indictment would be? If you study these Supreme Court cases, the answer is there in this case, and especially in Rapenko. The argument that my colleagues are making this morning, Judge Randell articulated in her dissent, and I hope to persuade her differently today, that argument that you had a completed crime, you had a completed charge, you can only sentence for that, and that the harm is where you get a greater sentence, that objection is explicitly rejected in Rapenko. That is Justice Ginsburg's dissent. And her dissent, much like Judge Randell's opinion, is well considered. It may be persuasive if we were sitting here working on a blank slate, but we're not. Rapenko decided this issue. What the Supreme Court has told us over and over is that most constitutional errors are subject to review for harmless error, that there's a strong presumption that harmless error review applies, except in these strange circumstances where harmless error review simply is not possible because some error has so infected the proceedings that you can't reach a reasonable judgment. Your initial premise is that this is harmless beyond a reasonable doubt. Do you agree that this was a sentencing error? Yes. What was the error? The error was that having been convicted without the jury finding of brandishing, that the judge essentially treated the matter as if there had been a conviction for brandishing. Well, essentially it was that he was sentenced using a mandatory minimum, greater than what he should have been sentenced with. Is that correct? Correct. How is that not harmful? Well, in the same way that in Nader and Johnson, the omission of the element by the jury is not harmful. No, this is not an omission of an element. We're talking about a sentencing error. And we look at whether the error, which you can see was a sentencing error, was harmless. How is it harmless when you're sentenced to a mandatory minimum that is two years higher than what you should have been sentenced to? It is harmless because the analysis the Supreme Court gives us, if you look at the record and you ask, would a... That's when there's a trial error, when there's an omission from the jury. Your Honor, there is no case standing for the proposition that Your Honor is suggesting that a sentencing error is somehow different. Let's look at it this way. In Nader, the element of materiality is not submitted to the jury. One could readily say, looking at that verdict, that that jury did not convict the defendant of a crime. But he was indicted for it. In all these cases, there is an indictment and a charge so that the defendant was on notice of what the possible mandatory minimum was. Here, there was no such a crime. It was contested with $5 million worth of income tax return. The court said, look, it's obviously material. The other thing that seems to me with Nader is that clearly it had to be found by someone. The problem there was that under the law of the jurisdiction, the court assumed materiality was something that had to be found by the court, therefore it wasn't submitted to the jury. But it's a very different situation. One, materiality was obviously established. And finally, there was a disputable materiality that he had to know had to be found by someone. He just went to the wrong fact finder. Can I answer that, Your Honor? Because his situation is identical. Everyone knew in this case at all times that brandishing would be found. The question was by whom. It's identical to Nader. The reason this case was prosecuted the way it was was because the Supreme Court had said in Harris that the government does not need to charge a fact increasing mandatory minimum. It does not need to prove it to a jury. So everyone identically in this case knew that brandishing was going to be in play at sentencing. And we were operating under Harris until 2013. Alain reverses Harris. Galvin reverses the courts that say the materiality is for the judge instead of the jury. This is an identical situation. Why couldn't the district judge? Let me finish with this. This is what follows me. The most analogous case here is Alin itself. We came to a conclusion in Alin just as Thomas said here. Very simple. The syllogism I mentioned earlier to you, Mr. Kessler and Mr. Adams. The sentencing judge, the sentencing judge appointed by the jury's verdict was five years imprisonment. The district court composed a seven-year minimum based upon its findings by proponents of the evidence. Because the finding of brandishing increased the penalty to which the defendant was subjected. It was an element. The court then goes on to thus violating the section of the right accordingly, revenging the Fourth Circuit's judgment with respect to Alin's sentence under the reckless statute and demand free sentencing. Basically, they said, look, brandishing is an element. Brandishing wasn't charged. He was sentenced for brandishing. Therefore, we demand free sentencing. Very, very simple syllogism. Why shouldn't we follow the case that is the most analogous to this? Because, Your Honor, Alin states that this was an error. And we acknowledge that there was an error here given the fact that Alin came along. It doesn't address the application required by Rule 52 of harmless or plain error. The issue wasn't presented, nor could it be. Because in Alin, no one could contest that that error would not be harmless if the jury had to make the finding because the jury in Alin made the opposite finding. If those were the circumstances here, I would not be before the court. That's the whole point of harmless error review. If there's still a significant burden on the government, but in those cases, such as this one, in which the error is harmless beyond a reasonable doubt, Rule 52 bars relief. That's where Cotton comes in. Cotton is a — Who doesn't say it in Alin? Alin never says — Exactly, because the harmless error issue is not presented to the court. The government did not argue it. But in Cotton, it's an apprendi error, which is the same as here. The defendant is convicted of a drug offense with no quantity. It's a 20-year maximum. They are one sentence to life, several are sentenced to 30 years. A clear apprendi error. But there, the government appropriately does argue plain error review because the objection was not made and because the evidence of quantity was uncontroverted and overwhelming. When the Supreme Court has to take on Rule 52, it does. But the key in Cotton was the plain error aspect. And, in fact, part of the reasoning of the court as to why it didn't offend the justice system under the fourth prong was based upon the fact that there was no objection lodged at all. This is a very different case. Well, no. What Cotton did was it looked at the full record and it saw that there was no objection to the quantity. In the same way here, that there's never been a factual objection to the quantity. That has to do with the fourth prong of plain error entirely. Well, let me talk for a moment about that, if I may. First of all, I disagree with Mr. Addis. Cotton did not endorse the idea that this is structural error at the third prong. It simply decided to move past it to the fourth prong. But let's talk about the fourth prong. The fourth prong says that... It's not relevant here. Well, it is because of Johnson and Nader. Johnson and Nader play out the same way. You've got the instruction. It's failing to submit an element to the jury. Johnson comes first. And it says, not subject to plain error review. And it is subject to plain error review. And it proceeds in the exact same form as Cotton does later. It says, we don't bother with the third prong. We're going to rule on the fourth prong. But you can't analogize a situation where it just has to do with a jury instruction to the situation here where it has to do with the indictment. I'll address both points. Nader comes along where there is a preserved objection to the omission of the element. And it relies on Johnson. And it says, we may not have decided there that it's not subject to structural error. But we did decide that it doesn't offend the fairness of judicial proceedings. And it says that, quote, cuts against a finding of structural error. We are in the identical circumstances here. I'm just puzzled by that, Mr. Zossner. How are we in the identical circumstance when you have admitted, as you must, that the man was never indicted for the crime that he was sentenced for? Can you point us to any case anywhere where the Supreme Court of the United States has said, you know what, it really doesn't matter what you're indicted for. It looks like these facts are good enough. Sentence stands. Because that's the position the government's taking here, isn't it? It doesn't matter what you're indicted for. If we can look back at the record and persuade sentencing judges that the grand jury would have indicted on this if they thought about it, and the judge would have instructed on this if he thought about it, and the jury would have considered it if they had had the chance to think about it, and then the guy would have been convicted, so you should sentence him for this. That seems a very unusual position for the government to take, and one that I've been puzzling over and trying to find some authority for it. Can you point some authority for that? It's cotton, Your Honor. Cotton, they're charged with that. Absolutely. They are charged with a conspiracy with no quantity. It has a 20-year maximum. They are sentenced to 30 years and to life based essentially on an aggravated offense, which is the conspiracy with the quantity of either 50 grams of crack or 500 grams of cocaine. So you're saying that's a different crime. You keep calling this an element, and maybe it's just terminology and I'm confused, but I thought what we were dealing with here was a substantively separate crime, something the Supreme Court of the United States has acknowledged is substantively a separate crime. Am I mistaken about that? No, you're not. Okay. So is it fair to keep calling this an element as if it were a sentencing element? Well, what it is, what the Supreme Court has called it, and it is terminology, the court has called it an element of an aggravated offense. It's a more serious offense. And it has been consistent in describing these errors in that manner since Apprendi. Cotton is an Apprendi error. These are immaterial differences. Apprendi error is where you are sentenced above the statutory maximum that would otherwise apply. How can it be an immaterial difference? We have a prisoner on the phone. Just press OK. Well, I'm just wondering how you can call this an immaterial difference when it's got two years difference in prison. Well, that's not what I meant, Your Honor. I meant the difference between Apprendi error and Elaine error doesn't exist. They're the same type of problem, which is where you have a sentence based on a charge that was not presented, based on a fact that was not found by the jury. Cotton is that case. So a constructive amendment to an indictment, in your view, is not structural error. In the government case, no, it's not. And actually the Supreme Court has never addressed that. I'll rest on that part of Judge Mandela's dissent where she appropriately noted that Saron, the constructive amendment case, preceded Chapman and the development of the harmless error doctrine in the Supreme Court. The United States position, which has not gotten back to the Supreme Court on that particular issue, is that constructive amendment is not. And by the way, every time the Supreme Court has given the short list of what is structural error, a biased judge, racial discrimination, et cetera, it has never listed constructive amendment among that, never listed Saron among that for that reason. Let me follow up on what is the United States position. Because on a particular, with respect to the co-defendants, and in general with respect to what's happened in the Clark case in D.C., on the particular, when Chambers and Wright went back for resentencing, I think the government did not bring up brandishing, is that correct? Correct. Why do so here? Well, we did bring up brandishing in the sense that the judge still had the authority to give a higher sentence. But it's not a mandatory. Not a mandatory. And the other one is, in the Clark case, the government comes in and they say, look, in light of the lien, we're not going to say anything with respect to whether there was harmless error. We're just going to let it drop. That's a very different United States attorney position from the United States attorney position that's being taken here in the Third Circuit. Why? Because the facts are different, Your Honor. There are many cases around the country, including in this district, where we have not made the harmless error argument because the facts do not allow us to make the necessary argument, which is that over the life of Clark it was different from this. There's a dispute as to whether the gun was brandished. And if there had been a legitimate dispute here, I couldn't stand here and say, harmless beyond a reasonable doubt. But I can say it here, and Raquenco permits this, because there was never a dispute about it. This robbery could not have been committed other than the gun was brandished. You're saying that Raquenco allows the following situation. Anytime that a district judge thinks that there's a fact that's been presented that would allow an enhanced sentence, although the government didn't list it in the indictment and didn't get the jury to find that fact, that that judge can now, in the exercise of his or her discretion, sentence that defendant to that enhanced sentence. Yes, and that can happen. Because I'm wondering, what's the limiting principle? We affirm, you're happy, you go home, right? So that means every district judge faced with this conundrum in the future can say, oh, I found this fact, I'll enhance. Are you taking it even a step further than that? Because you're saying that even if that crime was not found by the grand jury for purposes of the indictment, that the judge can impose sentence on a different crime. So if the facts that come out during trial would support a different crime than had been before the grand jury or the jury, that a judge can impose sentence on a completely different crime.  First of all, just a slight clarification. I'm not suggesting that Raquenco answers the indictment part. And that's why this case was briefed the way it was by the defense. Raquenco certainly resolves this as to the trial part, not having a jury make the finding. And I'm arguing that Raquenco informs the indictment decision as well. I'm not saying that the Supreme Court has resolved it. But to answer both of your questions, yes, the judge can find a fact that leads to an enhanced sentence. The limiting principle is the requirement that the government prove that the error was harmless beyond a reasonable doubt, which is a very substantial burden. That's a good question. That's a good question. I did cheat. And, in fact, Mr. Doddson seems to have participated in his most recent comments regarding Raquenco. Those were Washington versus Raquenco were the three resounding words that I understood you to want this court to take away. We're all arguing, Mike Moran. That's right. And yet, as I understand it, the majority in Raquenco treated the case as one of judicial fact-finding and sentencing. And so certainly we thought that the Washington State Supreme Court had adjudicated it that way, and in doing so, if I recall correctly, the majority expressly declined to entertain the defense argument that the charging error descends the case from the neighbor. If I'm right about that, if I'm reading or hearing correctly what you said a moment ago, then Raquenco isn't that in the doctrine there all the way you suggested it would. It doesn't answer the question, what is the omission of an element from the charging instrument, and the omission of the jury's doctrine followed by judicial fact-finding and sentencing can be harmless. So why is Raquenco so important to you? Well, Raquenco is important because we've had this new argument presented by the defense that we have here a mistake in the trial jury not finding this as well as the grand jury. Raquenco is dispositive with regard to the trial jury not finding the element, and it's informative with regard to the indictment error. Because remember, in a trial, it would be quite odd. It's informative is what a lot of the cases here, probably all of the cases are here. So I'm trying to figure out why it is as important as you suggested in your early comments. Well, let's look at it this way. Raquenco holds, and Nader before it, holds that a jury does not have to find an element of an offense, and the court can still sentence for that offense. And so the argument we're left with here is that, oh, but the grand jury does have to find the element. And that would be, if that's the outcome of all this, I would respectfully suggest that is passing strange because it's the jury, the trial jury, that gives all the protections and incentives. The purpose of a grand jury is to find probable cause in a non-adversary proceeding in which it's not public, there's no judge, there's no right to exculpatory evidence, all the protections that apply at trial. So on that, it's not really me. The grand jury puts that notice, and the jury doesn't know what it's up against. To illustrate what Judge Jordan and Judge Krause are asking, if the defendant is charged with manslaughter, he's tried for manslaughter, jury's instructed on manslaughter, he's convicted of manslaughter. At sentencing, the judge finds that in the record, there was overwhelming and uncontroverted evidence regarding premeditation. The judge, under your position, could sentence him for murder rather than manslaughter. Is that correct? Two answers to that question. First of all, yes. The logical outcome of our position is yes. But let me suggest also that, again, we have that liminal principle that I think would be effective in every case. But let me go further than that. That is a difficult question that I would suggest that this court does not necessarily have to reach because you have to look at the difference in the mistakes here. This case, actually much like Nader and as Judge McKee was referencing earlier, this case does not involve a problem of notice. The situation we have here, the Elaine error we have here, involves an element that everyone knew about and that everyone knew. Charging. Charging. What you were charged with. Correct. But at the time this case was brought, the Supreme Court of the United States had said, you do not need to charge this. And everyone knew that it would be presented as sentencing, and that's why it came up in the PSR and that's why the seven years was imposed. Your hypothetical is more difficult, and I'm not sure that the court needs to reach it. In a case like this where you have the notice function served in that everyone knows based on Harris what's coming in this case, all you have is the omission from the indictment. You're left with a straightforward harmless error question, which is, had this issue been presented to a grand jury, what would it have done? And we know that answer. But the landscape changed since Harris, so we're not talking, so let's go back to Judge Jordan's question, we're not talking about an element where there wasn't a structure or an element. We're talking about something the Supreme Court had said is a different crime. So to put it even more starkly, the government is suggesting that if there's a trial on, say, money laundering charges, and in the course of that, there's evidence that comes in where the trial judge concludes that there's evidence of trafficking of more than five kilos here, that the judge can impose a mandatory minimum on a drug offense without that ever having been charged before a grand jury or found by a jury. How could that be? Your Honor, I am not arguing that there was no error here. Everybody acknowledges there was an error we now know based on a lane. What this case is about, I suggest, is is this one of those rare errors that is not amenable to harmless error review? Is it the seventh that gets added to the list of six errors, and only six errors that the Supreme Court has identified, or do we subject to harmless error review? And the hypotheticals that you're giving, I'm suggesting, would never satisfy harmless error review. Even if we look at it from a harmless error perspective, aren't we talking here in terms of the substantial rights that are affected, not just the additional time in jail, but we're talking about a violation of the Fifth as well as Sixth Amendment rights to have your case charged before the grand jury and found beyond a reasonable doubt by a jury. Again, that's the error, and it's a constitutional error. But there are reads of constitutional errors that are subject to review for harmless error. That is the norm. That's what the Supreme Court tells us. So simply to talk about the importance of these rights, which I don't dispute in the least the importance of the Fifth and Sixth Amendments, does not answer the question. What if the evidence in this case had shown that all three involved in the robbery had guns, but one had a gun in his waistband, and the trial testimony was equivocal as to which of the three had the gun in the waistband, and the other two had the guns out front? Well, if you take away the aiding and abetting aspect, that's what needs to be shown in our presidential cases where the government is not making a harmless error argument after a length. If there is a reasonable debate by definition. So you concede that on those facts it would not be harmless error? In these cases, if you had one gentleman and there was equivocal evidence as to whether it stayed in his waistband or came out, the error would not be harmless. The answer that you responded to here to Judge Vandell was in effect an answer to Judge Meadoway's question, what are the consequences of this case? The consequences of this case are scary. It's just my error, frankly. Is there a lasting impact of this case? I mean, given that we now have a pending and we have a length, is this a one-off case or does this have a lasting impact on other cases? Everything has to go before a jury except maybe evidence of a prior conviction. Well, the significance of the case with regard to Elaine is diminishing with the passage of time because, of course, now we're charging these things. If Lewis had been charged today, by the way, obviously, we would have charged and the jury would have found it. Are there other cases in the pipeline? There are some other appeals in the pipeline, but you're right. It's diminishing over time. What we learned, though, the significance of this case, and I'll come back to Judge Amber's point, the significance of this case is that these problems seem to crop up. We now have 15 years of experience in which sentencing law keeps shifting under our feet and these issues recur. This is Vasquez again, and I do think this court would be overruling Vasquez to find that this is a structural error, when all the courts at that time held that a plenty error is not structural. So that's the significance of this case. Is it scary? No, it's not. It's not scary in the same way that Nader and Requengo are not scary. It was not scary? There was somebody who was a defendant? I don't believe that it's scary. I think you're going to say it is scary, but it's only as scary as Nader and Requengo. Well, what I'm saying is that I don't believe that the tactics that are going to be given are a realistic possibility where the burden is on the government to prune harmless air beyond reasonable doubt. But how is this any scarier than Cotton, in which a man is sentenced to life imprisonment, and the Supreme Court not only upholds that sentence, but Chief Justice Rehnquist, at the end of that opinion, says what would be a miscarriage of justice would be to let him off of the sentence that he deserves based on the crime that he was found to have committed. Because he never said anything. He never brought it to the attention. Do you believe Cotton would be decided the same way today? Well, I have to assume that, and this court was bound by it until the Supreme Court says otherwise. Mr. Zeisner, one other question I have for you. On the other side, you've always been interested in law release. Can you distinguish it? How do you distinguish law release? Why should this court not follow a 10th Circuit case? Well, law release, first of all, says that the air is not to be touched off. It then proceeds to apply a plain air review and say this is always going to be plain air. It relies on an earlier 8th Circuit case from 2001 that was overruled by Cotton. And so, you know, much as I respect the 8th Circuit, I don't think it's one of its finest moments. It didn't address the very subsequent discussion that we're having here this morning, which requires us to look at Cotton and Nader and Johnson and then later at Raquenco. So it's simply incorrect based on its insufficient reasoning. You said, I'm sorry. Okay. Before, when you were, when the case got to the district court for revising, the government's going to take the position that the indictment gave notice only to the mandatory minimum of five years for the use and carry. The jury made no finding. That's our position. Here, with the same scenario, co-defendant, you're arguing that this court should ignore the very position you're going to take, and that's why I guess it's not really scary, so to speak, because the government's not going to take a position like it's been put forth in that hypothetical because the government is going to stand up and take a position. This is what's charged in this case. So here you're asking us to kind of ignore that and do something different. How do you reconcile those two positions? Well, we're required to follow the law, and the law on appeal is Rule 52, which imposes the harmless error or plain error rule because of the fundamental principle that not everything gets reversed and we don't keep redoing everything where the error is inconsequential. When we're before a district court, as sentencing where the objection is properly made, we need to follow the law there and say that this is how it has to be sentenced. But that's because it would be inappropriate for any other sentence to be... If I could answer, it would be an error, and we don't invite district courts to commit error. If I could pull the lens back just a little bit, again, I've talked about this Apprendi revolution and all the changes that keep happening with Blakely and Booker and now Elaine. If you look back, you always have this line drawing problem. There are always thousands of inmates, some on the right side of the line, some on the wrong. It's been an unfortunate thing to witness, but the courts, including this court, have been very strict about it because there are rules of finality and retroactivity. There are many people still serving pre-Apprendi sentences based on drug quantities that increase their statutory maximum that were not charged or found by a jury. This is what happens, and unfortunately, it happened within this very case. But it doesn't absolve us of the requirement to follow the law. Is this the last case? Too bad. No questions. Time's up. Go ahead. No, I thought you said to follow it. I'm sorry. Thank you very much, Your Honor. Was there any... I don't remember. I'm going to take two minutes, and then Mr. Addis is going to take three. I actually am astounded, to be honest with you, with the government's response to Judge Rendell's question because this is precisely what I envisioned, and this is precisely why I said in my brief, we see the invisible hand of the harmless error doctrine supplanting the process. It's a very dangerous statement to make that, in fact, a person convicted of manslaughter could then be sentenced to homicide because the evidence shows it. In fact, what the district courts are doing, interestingly, that Mr. Zalsberg ignores, and it's not a precedential decision, but Bradley, in fact, in Breast Cotton, and Dunn seem to be concerned by it. In fact, the decision in Dunn, Dunn made the decision where the court, the district court said very clearly that when there is a fact that is proven at trial, that is, that the eight-year-old child would then, the deceased, the eight-year-old victim, would then enhance the sentence such that it was a 30-year mandatory, still was not charged, and never had to go back, and the mandatory didn't apply. What the government is saying is extreme. This is what I said before earlier. The government's position is the extreme position here because the government is required and bound by the law every day to charge appropriately, to try appropriately. Mr. Hitzkecker, you certainly have a logical appeal that people shouldn't be punished for crimes that aren't found by the jury. But isn't that precisely what happened to Mr. Requenco? No. What happened to Requenco, and I'm going to let you ask, the jury was not asked about the gun. But it was charged. He was punished for the gun. The distinction of the lawyer. Right. So Requenco's okay because he was charged with a gun? I think he was. Why wasn't that worse? Because Mr. Requenco and his lawyer, having had the instruction submitted to the jury not about the gun, wouldn't it be normal for them to think that they're in the clear on that issue? It's distinguishing, Your Honor, because it was charged. And this is the important fact. As I said before, if you're not charged with robbery, but you're charged with misdemeanor, simple assault and theft, and you're convicted of those offenses, you can't be sentenced for the robbery. But it's okay to charge someone with something but then not present it to the jury? No. And then sentence them for the thing that was charged even though it wasn't presented to the jury? Your Honor, this is why I say the Fifth and Sixth Amendments are interwoven, that the Fifth and Sixth Amendment writes as bulwarks and protections against government overreaching, as it exists in this case, as the government is asking this court to do, is overreach, that they protect throughout. So it's charging. You can't separate them out and say somehow they're distinctive as if we could analyze them separately. They are a continuum. It is the Fifth Amendment that protects what is charged and what the defense is not on notice for. It is the Sixth Amendment that ensures that that trial is fair and decided by the partial jury. Well, that answers the question in your letters, by the way. I assume the aim is that you're moving to another point and not responding. I am, I am. My final point. Okay. I apologize. I need to wait back for 15 minutes. It's been a long time. It's been such an honor to be here, and I want to make this last point because I probably won't. Thank you. There's so many things that you need to do to be honored. I know. I know. Mr. Harris is taking his time right now. I will make this final point. Mr. Harris is it. I would like to make several brief points in response to Mr. Silesmer's argument. First, just about every single circuit that has looked at an issue similar here, where there has not been an aggravated charge in an indictment, the jury was not instructed on the aggravating element, but the judge nevertheless has analyzed it as a pure sentencing error and sent it back because the government cannot prove under reasonable doubt that the sentence would have been exactly the same had the proper mandatory minimum sentence been applied. That's the First Circuit, the Fourth Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth Circuit, the Tenth Circuit, the Eleventh Circuit, the D.C. Circuit, and the Supreme Court when they analyzed the issue in a lane. The second point about why an indictment matters. An indictment is a very important document in federal court. The reason that you cannot have a reviewing court reenact or replicate the role of a grand jury is because the grand jury has discretion to charge an offense or not charge an offense or to charge a lesser offense when there is probable cause for the greater offense. The Supreme Court specifically held this almost word for word in Vasquez v. Hillary. Because this grand jury has that innate discretion, this court cannot take over the role of the grand jury. That's different from the trial jury context, the Supreme Court has said, in the Nader case. A trial jury is required to convict of the maximum charge for which there is proof beyond a reasonable doubt. The Supreme Court has never officially endorsed nullification. And so because of that, there's a requirement, and the reviewing court can supplement, can replicate the role of a rational trial jury by deciding whether there is proof beyond a reasonable doubt because of that requirement in the trial jury context. This case is particularly significant because there was no crime charged in the indictment. Mr. Lewis was not on notice that he could have... Let me stop there, Mr. Adams. But doesn't this case distinguish from all of the other cases that were cited in that Mr. Lewis was on notice that he was charged with brandishing, although it was charged in the Hobbs Act count. So he was on notice, the jury heard about brandishing, the jury convicted for brandishing, and I'll add an additional fact that may distinguish this case, is that the maximum sentence to which he could be sentenced far exceeded the seven years to which he was sentenced on this count. It looks like I'm running out of time, but I'd like to address the serious issues that I have with a number of those points. Please answer your question. First, he was not indicted for brandishing. Well, he wasn't indicted for brandishing. There was facts in a separate count, count two, the Hobbs count, that may have satisfied a brandishing element, but that's the factual predicate for the Hobbs count. But he was given notice that brandishing would be part of this case. He may have been given notice that brandishing could have been part of his sentence, and that's because under Harris the grand jury was not required to include an additional element, but that's very different because he may have been on notice that he could have been sentenced for an aggravated crime under a preponderance of the evidence standard. It was not an element that he could have contested before the jury. He was not on notice that he was being charged before the jury with a different crime, and he may have and probably would have contested the additional element had he known that he could have before the trial jury, and that's really significant because the unreasonable doubt standard that the trial jury faced was exceedingly different than the preponderance of the evidence burden at that time. Thank you. Thank you very much. We'll be taking that as an advisement.